Good morning, and may it please the Court. My name is Jack Day, and I am a certified law student at the University of California, Irvine School of Law. My partner's name is Sarah Dawley, and we are under the supervision of Stuart Miller. I'll begin by addressing the District Court's rejection of Carr's deliberate indifference claim and its denial of injunctive relief on that claim. Ms. Dawley will address the District Court's decision to grant the defendant's motion for summary judgment on Carr's retaliation claim. With the Court's permission, I'd like to reserve three minutes of our time for rebuttal. All right. Jody Carr is a prisoner in constant danger of his life. He filed pages of detailed allegations describing how Sgt. Segardelli and Cpl. Stelzer first threatened him for contacting the ACLU, and then carried out their threat by acting with warden blades to twice house a next-win inmate who had previously broken his spine in a vicious attack. Yet the District Court described Carr's graphic and detailed allegations as threadbare and conclusory. As this Court is aware, Iqbal requires plaintiffs to plead factual content that allows the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct. Carr's allegations easily meet that standard. He alleged that September 2014 he was first attacked by inmate Marzullo Traynor. In response, the Idaho Department of Corrections Investigations Unit issued a keep-away order ordering that the two inmates be kept separate. Then on February 9th, 20 inmates received letters from the ACLU. Just two days later, Sgt. Segardelli and Cpl. Stelzer called the inmates to a tier meeting and threatened them. Specifically, they said to Carr, if you complain, we will house you where you got smashed out, and you will get smashed out again. Then on April 13, Carr submitted his complaint in this lawsuit. Just three days later, on April 16, 2015, the defendants carried out their threat and housed Carr next to Marzullo Traynor, who attacked him within 24 hours. Then on April 18, just one day after this attack, the head of Investigations Unit, Nicole Fraser, came to Carr's cell and found that he had been housed next to Marzullo Traynor and that he'd been attacked again, and she ordered that Carr be moved away immediately. Then in July 2015, for a third time, the defendants housed Carr next to Marzullo Traynor and he was attacked again. These allegations not only meet the ICBOR requirement, but they also state a cognizable Eighth Amendment claim under the standard established in PhRMA. In PhRMA, the court said that a prison official may be held liable under the Eighth Amendment if a prison official knows or should have known of a substantial risk of serious harm to an inmate, but does not take reasonable measures to abate that risk. Here the prison officials knew of the risk to Carr. The keep-away alert instructed them to keep the two prisoners separate. Then the second attack also instructed them that Carr was at a substantial risk of serious harm. Nicole Fraser also explicitly intervened and moved Carr away, further alerting the officials of the risk of harm to Carr. Could I ask a factual question? Yes. Mr. Carr was in protective custody in the E1 unit when all this happened, right? Was he housed singly in the cell? So Carr was housed in the E1 unit singly and every time these attacks occurred, Carr was pulled from protective custody and housed next to inmate Marzullo Traynor, who was not in protective custody. Every time that happened... Put back in general population? Yes, next to inmate Marzullo Traynor. Every time that happened, on two occasions, he was attacked within 24 hours. The prison officials here used that threat to try and silence Carr, but it did not work. He continued to complain. He continued. He filed this lawsuit and on both occasions, he was attacked within 24 hours. The defendants do not dispute that Carr was twice housed next to Marzullo Traynor. They do not dispute that he was attacked on both occasions. I have a procedural question for you. Is Mr. Carr appealing the district court's decision to dismiss his original complaint for failure to state a claim, which we would then review de novo, or is he appealing the district court's decision to deny him leave to file an amended complaint, which we would review for abuse of discretion, I believe? So the district court allowed Carr to amend his complaint and then in its second order, said that Carr had not corrected the deficiencies of the original complaint and it was in this amended complaint that the bulk of the allegations that we rely on for the deliberate indifference claim are contained. So we're challenging that the court should not have struck the amended complaint as proposed by Carr because it's sufficiently stated in that claim that the prison officials here knew that Carr faces substantial risk of serious harm and did not take measures to abate it. I'm just wondering, you know, has Mr. Carr waived his argument that the district court abused its discretion by not granting him leave to amend his complaint? If Mr. Carr failed to address it in his briefing, can we even consider it? Your Honor, in the briefing, we addressed the allegations set out in the complaint and the amended complaint. So it's our opinion that the district court did abuse its discretion in not allowing Carr to amend his original complaint because of the facts that he set out in his amended complaint were sufficient to meet the farmer standard. Have you gotten an answer? No, I'm not quite sure. Two things. Are you appealing the dismissal of the amended complaint? Yes. Are you appealing the ruling of not giving him leave to file an amended complaint, a deferred amended complaint? No, we're appealing the dismissal of the amended complaint. So we don't have to worry about abuse of discretion in failure to grant a motion to amend the complaint. No. All we have to worry about is whether the complaint was sufficient. Exactly. All right. So the district court said that Carr did not correct the deficiencies of the original complaint. It is our position that he did correct those deficiencies. I want to be I'm going to defer to her and address that again in the rebuttal. Thank you. Good morning. My name is Sarah Dolly. The lower court's incorrect assessment of Carr's evidence as insufficient is equally applicable to Carr's retaliation claim as it was to his deliberate indifference claim. The district court incorrectly granted the defendant's motion for summary judgment despite 17 detailed affidavits contesting the defendant's facts. Of the five elements of retaliation, the district court took issue with three of those elements, a legitimate penological purpose, whether the defendants had retaliatory intent, and chilling effect. As to the penological purpose, the defendants have asserted one version of the facts, that the tier meeting was held to deal with issues of drug use, gambling, and extortion. Carr has asserted a completely different reason. Nine of the inmates attest to the tier meeting taking place and the sole discussion of the tier meeting being about the ACLU letters that had arrived. Inmate Smith said, for example, Sergeant Segadelli and Corporal Stelzer told us, if we complained to the ACLU anymore or the courts or filed grievances, we would be removed from protective custody and they'd let us get attacked in dangerous housing. Additionally, the district court said that the defendants did not have either Segadelli or Stelzer took action on account of Carr's or others' protected conduct. That's incorrect. There are nine affidavits, as I stated previously, that directly discuss how the tier meeting was about communications with the ACLU. Additionally, there's circumstantial evidence of timing. So in this particular case, the ACLU letters arrived on February 9th. On February 10th, all of the inmates were isolated either in were brought together and they were told, if you continue to communicate with the ACLU or the courts or grievances, we will remove your protective custody and you'll be smashed out. They directly stated what their intent was and there's additional evidence supporting the timing indicated that they had retaliatory intent. Finally, the district court took issue with whether there was a chilling effect. The standard is whether is an objective standard and it's whether a person of ordinary firmness will continue to exercise their First Amendment rights in spite of the retaliatory conduct. Here, the district court said, it is abundantly clear from the record before the court that Carr took full advantage of the grievance system and has filed other lawsuits in this court. The court was applying a subjective test looking at Carr as an individual, which is incorrect. This is an objective test. This court held in Rhodes v. Robinson. Specifically, it's an objective test because to rule otherwise would create a vicious catch-22. Only those inmates who cease to pursue their rights would be the ones able to enforce their rights. So the fact that Carr continued to file litigation despite serious threats to his life is not indicative of chilling. This court has also stated that threats to transfer an individual without even transferring them would be sufficient to chill a person of ordinary firmness. Carr has been subject to serious threats against his life as a result of the defendant's unconstitutional conduct. He sought relief from the court but has obtained none. Therefore, we ask that you reverse the district court's incorrect dismissal of Carr's Eighth Amendment claim, its incorrect granting of the defendant's motion for summary judgment, and grant the plaintiff's request for a preliminary injunction to ensure his future safety. Thank you. Good morning, your honors. Michael Ely on behalf of the defendants, Sergeant Segedeli, Corporal Stelzer, and that includes for purposes of this appeal, Warden Blades, and Corporal Clines. We appreciate the opportunity to address the court this morning. In preparing the briefing and preparing for argument, it's a difficult case to frame in part because there's procedural issues and substantive issues before this court. There's a little bit of background that needs to be understood and it's in the record, although maybe not In 2014, the state of Idaho took back operation of the facility where Mr. Carr was housed, Idaho State Correctional Center, from a private prison management. There had been some controversy and some issues that had come up in that time period under private management and it dealt with gang activity, possession of weapons, violence, and drug activity. So in July 2014, at the end of the contract, the state of Idaho took it back over and Warden Blades went there to correct issues that needed to be corrected. That brings us... Sure. How that background affects, I guess, the issue I have a lot of questions about, that's the retaliation claim against Corporal Seltzer and Segodeli. Segodeli, yes. Yeah, and I guess, I appreciate there's some procedural issues here, but with respect to that substantive claim, how do you respond to the fact that the plaintiff filed 17 inmate affidavits asserting that the defendants threatened them to stop filing grievances, or else the defense would basically strip inmates of their protective status? There's a couple of responses, Judge. One is that 17 affidavits were prepared, witnessed by Mr. Carr, and then allegedly signed by the other inmates. We don't know, and of course... It is true at this point, and nobody, that's not disputed in the record? I would agree with that. They have quotations about different things that were said. I understand and appreciate that Mr. Carr presents a lot of issues to the institution, but I'm just trying to figure out how a genuine issue of material fact isn't created on whether these defendants, the adverse action of rounding up and threatening plaintiff and the other inmates, it seems like it was connected to the inmates' protective conduct, and trying to figure out how that doesn't survive summary judgment. Give me your best argument. There's two that are directly on point. Number one is, to the extent that Segedeli and Stelzer are alleged to have taken some action to affect their protected right, they have no ability and had no ability to affect Mr. Carr's housing, and that is undisputed in the record. They're investigations officers, and they do not control security or housing. So that is one element that's... Then why did they say they could? I believe, Judge, in the context of even the affidavits filed by Mr. Carr, the speech was about to the general population, and if there are continuing instances of gang activity, of violence, of drugs, of possession of weapons, that the protective custody envelope, meaning, and by that I mean, that the freedoms that this facility had provided... The affidavits didn't say, if you keep taking drugs, we're going to put you back in the general population. The affidavits said, if you keep talking to the ACLU, we'll put you back in the general population. That is what is alleged in the affidavits. And I'm alleged, affied, in the affidavits. Fair enough, Judge. What we do know is that there had been this activity that had been going on, and well documented, uncontested in the record, and that... The activity of a Masulo trainer beating up Carr? No, Judge, I apologize if I was, or suggested otherwise. The activity of Stelzer and Segadelli going to the unit and talking to the inmates, and telling them that if this activity continues, meaning the drugs and the violence, that your housing status is going to change. And it's not, we're going to throw you back in general population. Again, I know that's disputed in the affidavits, but this needs to be cleaned up here. What it needs to be cleaned up is a jury trial. What did these guys say? Did they say, if you keep using drugs, you're going to be rehoused? Or did they say, if you keep complaining to the ACLU, you're going to be rehoused? Now, isn't that an issue of fact? If it's the latter, it seems to be a retaliation claim. If it's a former, it's not a retaliation claim. What will the jury say? Your Honor, we believe that the magistrate court found in her decision on the summary judgment that there was a legitimate penological reason for the meeting due to the activity that had occurred. If it's drug activity, which the officers are threatening is going to be the cause of their being rehoused, what's the reasonable penological activity if what the officers are saying is you keep talking to the ACLU and you're going to be rehoused? What's the penological activity there? There would be none. There would be none. So it's an issue of what they said, isn't it? I don't believe so. I mean, you really need to give a credible answer in response to this. I would agree, Your Honor. And the burden is on Mr. Carr to show lack of penological purpose. It's to show a question of whether a material fact exists here. And he's supplied like it or not, 17 affidavits. And I just don't know. And they are directed at this exact issue. They support, you know, the whole retaliation and all the elements for retaliation. So I'm just trying to figure out, you know, how you get around that. The affidavits and the briefings submitted by Mr. Carr discuss at least his interpretation of what the ACLU letters were about. Of course, Zegedelli and Stelzer say they had no idea. And that's undisputed. But the affidavit, no, it is disputed because the affidavits themselves say that these two officers said it. Not undisputed. By the inmates. They may be inmates, but this is a question that goes to the jury. I don't think you can ask us to say, well, because they're inmates, we don't believe them. Sure, Your Honor, I would agree. And we're not asking you to do that. Sounds like you are. I don't intend to. What I do intend to request of the court is to look at what's said in the affidavits. And the communications that were allegedly made between the ACLU, yes, there were letters, dealt with a litigation known as BALA in Idaho. And BALA has been around since about 1987 and deals with a completely different facility. Mr. Carr is saying that those communications were that he was going to take the BALA claims to this other institution and try and enforce a rule against double bunking in these facilities. BALA has no application to the Idaho State Correctional Center. So if you look at the affidavits, I'm not asking to make a credibility finding. I'm asking to make a finding that the chilling effect, the conduct doesn't make any sense. There's no way to support that if you're in Mr. Carr's shoes. There's no way that BALA can apply to the Idaho State Correctional Center. And that's just a fact. Wouldn't that be something for the trial court to take up, possibly under Rule 29, once the case goes to trial? If it were remanded for trial? Remanded for trial, and by Rule 29, Judge, I'm sorry, you mean? At the end of the case in chief? Oh, on a directed verdict? I think the court could look at it then, absolutely. I think the court did look at it in the summary judgment based on the evidence that was submitted by Mr. Carr and made that same decision. I'm having a great deal of difficulty following your analysis of what Carr was suggesting under the BALA case and what the affidavit said. Corporal Stelzer said, so you want to complain? Well, I gave you life and I can take it away. Admin gave me permission to send any of you where I decide to. Carr also alleged that Corporal Stelzer said he would pull a PC protective custody of any inmate that complained again. Next thing we know, isn't that retaliation? A threat of retaliation? Judge, let me answer that this way. What we know is that two days later, there was a change in housing by somebody else. Not Segedeli, not Stelzer. The timing in many cases of retaliation can be taken as circumstantial evidence of causation. Two days after this statement, now you're telling me that Corporal Stelzer had no control over the timing. That's not what he's alleged to have said at the time. He said he could do it. Admin will give me anything I want, right? Now you're saying you can't consider that two days after he made the statement, the people were rehoused as evidence that he had anything to do with it. Isn't that the sort of thing that we have juries to do? Yes, Your Honor, we do. We do. We also have review by the district court. Let's talk about the first two elements, which are the insufficiency of the allegations of the complaint, and it wasn't discussed at all, the ruling on the preliminary injunction. Let me go to the preliminary injunction first. On the preliminary injunction issue, and I guess I'll go back to the bit of history that I was providing, the overall theme that you see from Mr. Carr is that he does not want to be at the Idaho State Correctional Center in Boise, where he wants to be in the form of a mandatory injunction, is to be housed in Orofino, about 250 miles to the north, at a work camp. He wants to be given a different housing status, that his protective custody be removed, and he be given additional freedom under the regulations he is not entitled to. So that was adequately reviewed by the magistrate judge. Your claim is that he's not likely to succeed? Absolutely not likely to succeed, and the release is not narrowly tailored under the PLRA for him. As to the access to courts claim, one of the major issues that we brought up in briefing is that it is currently being litigated in another lawsuit, and that's Carr v. Link, and I know that the timing, there's questions in the reply brief as to which case takes precedent. Bottom line is that his claims dealing with Marzullo Traynor all have to do, are all involved in the Link case. It's all being litigated currently. After his plea to amend was denied, he then brought a separate lawsuit. It's under a different magistrate judge, Judge Bush, in Idaho, and so we believe that this court essentially no longer has jurisdiction, because it's being litigated somewhere else, or at least did not ask to accept jurisdiction of that. Judge, you asked about the standard of review. We believe that this, as to the access to courts claim, and the failure to protect claim, that those are squarely on an abusive discretion standard, that the magistrate judge, in reviewing the complaint, the original complaint, which did not have any of the allegations with regard to Marzullo Traynor, and was not considered as part of the summary judgment, the amended complaint was not, that the original complaint is the operative pleading in this case. The judge denied the failure, denied the motion to amend, and that, so that... That's not an appeal. They're only appealing the judge's ruling that under Iqbal and Twomley, there weren't sufficient facts stated from which an implausible inference of a violation existed. Would you address that, please? Yes. Yes, Your Honor, I would. The original complaint, in looking at the allegations, I see I'm running short on time, so I'll be brief. The original allegations as to access to courts, Corporal Kimes, did not include any facts to suggest that he took any documents. It only suggests that he ordered a cell search, which prisoners are entitled to do, and did not specify what legal materials were taken from him that had somehow prevented him from access to courts. What about failure to protect the inmate claim? The failure to protect the court, looking at the facts as alleged in the original complaint, did not find any personal involvement with the Sergeant Seggedeli, Stelzer, or Warden Blades. And that's just based on the original facts in the original complaint. The amended complaint, which was not accepted by the court, had all the additional facts that dealt with Marzullo-Trainor. And your position is that the proposed amendments were insufficient also? Yes, based on the court's review of the proposed amendment. All right. Thank you very much. Thank you. In the case of Carr, you have rebuttal time. I'd like to make a few brief points. Firstly, opposing counsel said that the prison officials had no authority to move Carr. What they explicitly said to him is that admin gave me permission to send you wherever I want to send you. And that's in the affidavits. Second, in regards to the injunction, the prison officials here can't be trusted to ensure that Carr is held safely. Every time they pull his protective custody status, he is attacked. So this court should reverse the district court and grant Carr injunctive relief, ordering the head of the Idaho Department of Corrections to take reasonable steps to ensure that Carr is held safely. And those reasonable steps would include, but not be limited to, maintaining Carr's Level 2 protective custody status. As I've stated, the undisputed evidence on the record shows that every time that Carr loses his protective custody status, he is attacked. Finally, this is not a case about Bala. The opposing counsel brought Bala into this. Carr originally cites Bala in his original complaint, and that was a mistake on his part, and we're not proceeding on that claim. If the court has no further questions... No, thank you. Thank you very much. All right. Case of Carr v. Stelzer, NL, is submitted.
judges: Bea, Murguia, Keeley